J-S29045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: J.D.M., JR., A/K/A :<br>J.M., A MINOR : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| : | |
| APPEAL OF: E.R. : | |
| : | |
| : | No. 1960 WDA 2015 |

Appeal from the Order November 17, 2015
in the Court of Common Pleas of Allegheny County Orphans' Court
at No(s): CP-02-AP-0000146-2015

BEFORE: BENDER, P.J.E., PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                  **FILED APRIL 18, 2016**

E.R. ("Mother") appeals from the order entered on November 17, 2015, granting the petition filed by the Allegheny County Office of Children Youth and Families ("CYF" or "Agency"), to involuntarily terminate her parental rights to his dependent, minor child, J.M., a male born in October of 2010, ("Child"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b).[1]  We affirm.

The trial court has set forth the relevant factual background and procedural history of this case in its opinion filed pursuant to Pa.R.A.P. 1925(a).  **See** Trial Ct. Op., 1/14/16, at 1-2.  On September 9, 2015, CYF filed a petition to involuntary terminate the parental rights of Mother and

---

[*] Former Justice specially assigned to the Superior Court.

[1] On November 16, 2015, the trial court also involuntarily terminated the parental rights of J.D.M., also known as J.M., the natural father of Child, ("Father").  Father has not filed an appeal of his own, and he is not a party to this appeal or has not filed any brief in this appeal.

Father. At the hearing on the petition on November 16, 2015, both Mother and Father failed to appear, although Mother's counsel was present to represent her. CYF presented the testimony of Laverne Conley, the CYF caseworker assigned to Child's family. N.T., 11/16/15, at 6. Ms. Conley explained the family history with CYF, and stated that Child is currently placed with K.H., Child's paternal cousin. *Id.* at 6-13.

The trial court summarized the expert psychological report of Terry O'Hara, Ph.D., as follows:

> Terry O'Hara, a licensed [p]sychologist, conducted interactional evaluations between the Child and family. While Dr. O'Hara was prepared to testify at the November 16, 2015, hearing, all parties stipulated to Dr. O'Hara's report and therefore Dr. O'Hara did not testify. Dr. O'Hara's reports concluded that there is no evidence that Mother and her paramour are able to appropriately meet the needs and welfare of the Child at this time, due to their extensive and complex mental health presentations and substance abuse histories. Furthermore, Dr. O'Hara does not believe that the Mother possesses that stability at this time to internalize parenting skills and stabilizing her mental health issues should be prioritized.

Trial Ct. Op. at 2 (unpaginated).

On November 17, 2015, the trial court granted the petition to involuntarily terminate the parental rights of Mother and Father to Child, pursuant to Section 2511(a)(2), (5), (8), and (b) of the Adoption Act. On December 15, 2015, Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), in which she raised one issue for review.

In her brief on appeal, Mother raises the same sole question for this Court's review, as follows:

> Did the trial court abuse its discretion and/or err as a matter of law in concluding that Allegheny County Children, Youth and Families met its burden of proving that termination of Birth Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S.A. § 2511(b) by clear and convincing evidence[?]

Mother's Brief at 5.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [614 Pa. 275, 284,] 36 A.3d 567, 572 (2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (2011); *Christianson v. Ely*, [575 Pa. 647, 654-55], 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often

- 3 -

presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 539 Pa. 161, [165,] 650 A.2d 1064, 1066 (1994).

***In re S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The trial court terminated Mother's parental rights under Section 2511(a)(2), (5), (8), and (b). Trial Ct. Op. at 2 (unpaginated). Section 2511(a)(2), (5), (8), and (b) provide as follows:

**§ 2511. Grounds for involuntary termination**

- 4 -

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the

developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

This Court has explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but, under Section 2511(b), the focus is on the child. *In re C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

In her brief on appeal, Mother waives any challenge to Section 2511(a), and concedes that the record supports the trial court's finding that CYF sustained its burden of proof pursuant to Section 2511(a)(2), (5), and (8). Rather, she focuses her challenge on Section 2511(b). Mother's Brief at 11.

We review the termination of Mother's parental rights under Section 2511(b). Our Supreme Court recently stated as follows.

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs

> and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Mother argues that the termination of her parental rights offers no benefit to Child, in that he recognizes her as a parental figure and refers to her as "Mommy." Mother asserts that Child's placement with K.H. may offer stability for Child, but Child recognizes that K.H. is not his parent. Mother asserts that she has a positive relationship with Child and he understands that Mother is his parent. Mother claims that Child does not suffer any confusion regarding his relationship with K.H. or his placement in K.H.'s home that would necessitate the termination of Mother's parental rights.

Mother states that there is no indication from the record that the termination of her parental rights will diminish the stability of Child's placement with K.H. or that maintaining the parental relationship with an alternative form of permanency would be confusing or detrimental to Child. Mother suggests that by maintaining the parental relationship with her, Child could continue a relationship with her. Mother's Brief at 8, 14. Mother argues there is no caselaw that would prevent a child from living outside his parental home while, at the same time, maintaining a relationship with his parents. *Id.* at 13. Accordingly, Mother urges that the record does not support the trial court's finding that CYF met its burden of proving by clear

and convincing evidence that the termination of her parental rights meets Child's needs and welfare. *Id.* at 8, 14. We disagree.

We have stated that in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). It is appropriate to consider a child's bond with his or her foster parents. *See In re T.S.M.*, 71 A.3d at 268.

In addition, in *In re T.S.M.*, our Supreme Court set forth the process for evaluation of the existing bonds between a parent and a child and the necessity for the court to focus on concerns of the quality of the attachment and the availability of an adoptive home. The Supreme Court stated the following:

> [C]ontradictory considerations exist as to whether termination will benefit the needs and welfare of a child who has a strong but unhealthy bond to his biological parent, especially considering the existence or lack thereof of bonds to a pre-adoptive family. As with dependency determinations, we emphasize that the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. *See, e.g.*, *R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)] (holding that statutory criteria of whether child has been in care for fifteen of the prior twenty-two months should not be viewed as a "litmus test" but rather as merely one of many factors in considering goal change). Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact. Similarly, while termination of parental rights generally should not be granted unless adoptive

parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

\* \* \*

[The Adoption and Safe Families Act of 1997, P.L. 105-89] ASFA[,] was enacted to combat the problem of foster care drift, where children . . . are shuttled from one foster home to another, waiting for their parents to demonstrate their ability to care for the children. **See In re R.J.T.**, 9 A.3d at 1186; **In re Adoption of S.E.G.**, [901 A.2d 1017, 1019 (Pa. 2006)]. This drift was the unfortunate byproduct of the system's focus on reuniting children with their biological parents, even in situations where it was clear that the parents would be unable to parent in any reasonable period of time. Following ASFA, Pennsylvania adopted a dual focus of reunification and adoption, with the goal of finding permanency for children in less than two years, absent compelling reasons. **See**, 42 Pa.C.S. § 6301(b)(1); 42 Pa.C.S. § 6351(f)(9) (requiring courts to determine whether an agency has filed a termination of parental rights petition if the child has been in placement for fifteen of the last twenty-two months).

**In re T.S.M.**, 71 A.3d at 268-69.

We have stated that the existence of a bond or attachment of a child to a parent will not necessarily result in the denial of the termination petition. **See In re K.K.R.-S.**, 958 A.2d 529, 535 (Pa. Super. 2008). This Court will not prolong instability for children when it is clear that their biological parents are unable to provide for their basic needs in the near future. **See In re T.S.M.**, 71 A.3d at 270.

In the present matter, the trial court adequately considered the developmental, physical, and emotional needs of Child. Moreover, the trial

court thoroughly considered Child's bond with Mother, and the effect of severing that bond. The trial court based its decision on Mother's current inability to provide proper parental care and control and her inability to meet Child's needs and welfare. *See* Trial Ct. Op. at 4 (unpaginated). The trial court properly considered that, although there was evidence of a bond between Child and Mother, it was in Child's best interests to sever that bond. *See id.*; *In re T.S.M.*, 71 A.3d at 268-69.

After a careful review of the record in this matter, including the notes of testimony from the hearing on November 16, 2015, and the expert report of Dr. O'Hara, we find that the competent evidence in the record supports the trial court order. As we stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the **child's right** to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (emphasis added). As the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the trial court's decision with regard to subsection (b). *In re S.P.*, 47 A.3d at 826-27.

Accordingly, we affirm the trial court's order involuntarily terminating Mother's parental rights based on the trial court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2016

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

IN RE: ADOPTION OF:

J.M.

a minor.

ORPHAN'S COURT DIVISION

CP-02-AP-0000146-2015

Superior Court No.
1960 WDA 2015

## OPINION

K.R. MULLIGAN, J.

J.R. (Mother), appeals my November 16, 2015, Order of Court terminating her parental rights to her minor child J.M. (Child).

At the November 16, 2015, termination-hearing caseworker Laverne Conley testified to the history of the case. The Child was born on October 18, 2010, to Mother. The biological father of the child is J.M.S. (Father). The Child entered the care of the Office of Children, Youth and Families, (CYF) on February 20, 2014. The Child was found on the streets in Bellevue near a Laundromat clothed only in a soiled diaper. The Father and Father's paramour were on the floor of the Laundromat. The Father had to be revived with Narcan. At the time of this incident, Mother was in a mental institution. Based on this incident CYF requested dependency based on neglect and endangerment. The Child was adjudicated dependent on March 7, 2014, at which time the Child was removed from the care of both the Mother and Father and since has not been returned to the care of either. Laverne Conley testified that there were other concerns in addition to the Laundromat incident. The Child's medical care was not up to date. There was a history of repetitive hospitalization on part of the Mother. Both Mother and Father have

a history of drug and alcohol abuse. Both Mother and Father had some criminal issues as well as a prior report indicating that the child was not being properly cared for.

Terry O'Hara Ph.D., a licensed Psychologist, conducted interactional evaluations between the Child and family. While Dr. O'Hara was prepared to testify at the November 16, 2015, hearing, all parties stipulated to Dr. O'Hara's report and therefore Dr. O'Hara did not testify. Dr. O'Hara's reports concluded that there is no evidence that Mother and her paramour are able to appropriately meet the needs and welfare of the Child at this time, due to their extensive and complex mental health presentations and substance abuse histories. Furthermore, Dr. O'Hara does not believe that the Mother possesses that stability at this time to internalize parenting skills and stabilizing her mental health issues should be prioritized.

Both Mother and Father failed to appear at the November 16, 2015, termination hearing although Mother was represented.

Following the hearing, I granted CYF's TPR petition and found that CYF met its burden of proof by clear and convincing evidence that grounds for termination against both Mother and Father existed under 23 Pa. C.S.A §2511(a) subsections (2), (5), and (8), and that termination met the needs and welfare of the child pursuant to 23 Pa. C.S.A §2511(b)

In the Mother's Concise Statement of Matters Complained of on Appeal Mother claims that the trial court abused its discretion and/or erred as a matter of law in concluding that Allegheny County Children, Youth and Families met its burden of proving that termination of Birth Mother's Parental Rights would meet the needs and

welfare of the child pursuant to 23 Pa. C.S.A §2511(b), by clear and convincing evidence.

Mother does not appeal my findings that grounds exist for termination of her parental rights under Pa. C.S.A §2511(a). However, Mother argues in her Concise Statement of Errors Complained of on Appeal that despite not appealing the grounds for termination, that the termination was inappropriate due to a needs and welfare analysis pursuant to Pa. C.S.A §2511(b). The Pennsylvania Superior Court has repeatedly found "that parent rights are not preserved...by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs." *In Re Adoption of Godzak*, 719 A.2d 365, 368 (Pa. Super. 1998).

The Supreme Court has instructed us that [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." Pa. C.S.A §2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A3d 781, 791 (Pa.Super.2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa.1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently serving the parental bond. *In re K.M.*, 53 A3d at 791.

*In re: T.S.M.*, 620 Pa. 602, 71 A.3d 251, 267 (2013).

It is clear that both the Mother and Father are in no position to meet the needs and welfare of the child as evidenced by their past behavior as well as their failure to appear at the November 16, 2015 termination hearing.

Laverne Conley testified that she had the opportunity to observe the Child in the pre-adoptive foster home and he is doing extremely well. Lavern Conley further testifies that the Child's socialization has improved enormously. His communication skills are much more solid and he is a much calmer child.

In Dr. O'Hara's opinion, stability, security, and permanency are of urgent importance for the Child due to his historical lack of stability and security. Several developmental themes depend upon a foundation of security and stability and in Dr. O'Hara's opinion, the Child's pre-adoptive foster parent is able to provide this for the Child. Finally, it is Dr. O'Hara's belief that the benefits of adoption for the Child to the pre-adoptive foster parent outweigh any potential detriment in the termination of parental rights for the Child's Mother and Father.

For the above reasons, the order of November 16, 2015, should be affirmed.

Date: January 14, 2016